Welcome to the Ninth Circuit. Judge Schroeder, Judge Gould, and I are happy to be with you. We've got a full slate of cases today. We've got four cases, so we would ask everyone to be sensitive to your time. If you want to reserve time for rebuttal, please pay attention, ask for it, and try and sum up as your time is expiring, because we're going to try and hold to the timing here. We'll just jump right into it and go ahead and call our first case, which it looks like the parties are already ready for, Netzel v. American Express Company, case number 23-16083. We'll hear from Mr. Pivtorek. Yes, Your Honor. All right. Perfect. Good morning, Your Honors. May it please the Court, my name is David Pivtorek, and I represent the appellants Brian Netzel, Nancy Larson, Eric Lankamp, and Travis Smith. And I would like to reserve three minutes for rebuttal, please. Amex's arbitration agreement in this case is unenforceable because it prohibits the plaintiffs from seeking public injunctive relief that would stop Amex from continuing to engage in its racially discriminatory practices and policies that impact not only its workers, but all its customers as well. So can I ask, I want to get the procedural history right here. This is a putative class action, correct? This is, Your Honor, yes. And we have four named representative plaintiffs, is that correct? At this stage, yes. Okay. How do we apply that in the choice of law provision? Because it seems like each of these four representative plaintiffs have different interests, and theoretically you could say, hey, three of these don't have any connection to California, but one, if I forget the name, Larson has the most. But can we split that up in that way? Is it even possible, I don't know if you're even asking for this, to basically assume we don't agree with you on the three, can we send a class action with three representative plaintiffs, well, could we send three representative plaintiffs to New York and then keep a class action with just Larson in California? Is that even permissible? Absolutely, Your Honor, because at this point this case is not at issue. We just have the, I believe it's the second amended complaint that's been filed, and this motion isn't in response to the second amended complaint. So there's no really class action at this point. Nothing has been certified. So essentially I think before it's certified, and I may be incorrect, but at this point we just really have four individual cases that have been consolidated. But it impacts the choice of law provision. Because in a putative class action, as I understand it, what we would do, so the district court said there's just too much here, it would be too difficult to do a choice of law provision on the different interests of all the potential class members. That's either right or it's wrong. If your theory is all we're looking at are the four named plaintiffs, then it seems like the district court's analysis might be wrong because you could distinguish between just the four. But if you have to do a choice of law analysis based on the putative class as a whole, which includes, what, 7,000, 10,000 potential plaintiffs? You mentioned customers. It could include 20,000. So, Your Honor, in this complaint we're only alleging as class members employees only. Okay. Yeah, the UCL claim, as far as the customers go, just speaks to that. But you could still have 7,000 plaintiffs, right? Potentially, yes. And don't we need to look at all of that for purposes of the choice of law provision? I think at this stage it's too early. I believe that's sort of a class certification issue. And this isn't in the briefs, but I believe other cases that have looked at this issue have basically said we can't decide it at this stage because we don't even know if it's going to be ever certified as a class action. So we really have to punt that decision down the road and initially determine just this threshold issue of, for these plaintiffs alone, which choice of law provision applies. And that's the Barba case that we cited just for the District of Arizona case, that when deciding choice of law provisions, you really have to look at each plaintiff individually. Because, again, if Amex is seeking to enforce this agreement against an individual plaintiff, then really the threshold question is just between this plaintiff and Amex. So we have to decide the interpretation of this agreement between just these two parties to the agreement. I think it would almost be putting the cart before the horse if we were just to certify a class and say we're just deciding choice of law when there has been no class, when we really just have sort of two parties who are trying to determine the contract. Well, five parties because each plaintiff would be different. Can I ask, sorry, just trying to move this along, but the DiCarlo case. Yes, Your Honor. Why doesn't the DiCarlo case control this? Because DiCarlo said you, I mean, don't you have to show that you could not get public interest relief in arbitration? DiCarlo said you clearly can't. DiCarlo, for the reasons we stated in our opposition, DiCarlo here is an applicable. And if I may try to explain this, so it's a little bit convoluted, but I think the best way to look at it is all the case law determining or trying to interpret or apply McGill have really found or identified three, you can call them categories, of clauses in these arbitration provisions. One, which is what we have in DiCarlo, is the class action or representative action waiver, which essentially says you have to proceed as an individual lawsuit. The second one is the non-mutual collateral estoppel clause, which this court mentioned in Patrick, which Amec cited in its Rule 28 letter, which is also present in the agreement. But finally, and this one is the dispositive one, it's the individualized relief clause, right? And here in our agreement, we have — But that was what was at issue in DiCarlo. Oh, no, it wasn't. It was individual lawsuit, right? So the only question that DiCarlo settled was, does a case that proceeds as an individual lawsuit preclude public injunctive relief? And in this case, in the cases like Blair and cases like Jack v. Ring, which we cited, the question was not on whether this is an individual lawsuit because an individual lawsuit can obtain public injunctive relief. The question is, is this individualized — is the plaintiff limited to individualized relief rather than an individualized lawsuit? Meaning, can the relief only benefit the plaintiff? And DiCarlo did not decide that question. I've got to be honest. I'm not tracking. Because to me, your whole argument is plaintiff, Larson, cannot get public relief in the arbitration. That's not true. DiCarlo says she can't. And I think — we'll hear from American Express, but what I hear from — what I thought I read from American Express was — that's what distinguishes this from the other cases is they've said, no, you can get that relief in arbitration. So, if she can get — if all these four plaintiffs can get this relief in arbitration, then the only thing is you can't have a class action. But we already know that that's okay. The Supreme Court has said you can't contract — you can't have a class action in arbitration. So, I'm confused by what you're — You seem to be mixing up whether it's multiple plaintiffs in a class action with whether it's public injunctive relief. No, Your Honor. Let me try to drill this down a little bit. Because, like I said, under California law, an individual plaintiff proceeding just as, you know, let's say John Doe. John Doe sues Amex. John Doe can get, in a court of law, can get an injunction that says — or let's use the DiCarlo example, right? John Doe can get an injunction that keeps a company from making robocalls to the entire California public, right? That is public injunctive relief. Right. Now, our agreement limits the relief that John Doe can seek to just John Doe only, meaning he can't say, stop making robocalls to every person in California. The agreement that we have here would limit him to individualized relief, meaning you can only get an injunction that says, stop making robocalls to John Doe only. Not the entire public, which is public injunctive relief. Yeah, but you can't get an injunction for the entire public in this case. Because you only have a narrow set of potential plaintiffs. Well, so, like the — I'm sorry. Oh, no. Go ahead. I'm confused. Okay. I thought you had a question. So, this is very similar to the Tesla case, where Tesla had policies that racially discriminated against employees, and Tesla said that an injunction, public injunction seeking to stop same thing we have here. What we're asking for is basically an injunction that says, MX, no more racial quotas. No more racial quotas. No more setting different financial criteria for people based on race, for like credit card customers, merchants, and things like that. So, that is the definition of an injunctive relief. And the plaintiffs, without this clause here in the agreement, the plaintiffs would be allowed to seek such relief. However, the individualized relief clause that says the arbitrator's authority is to make awards is limited to awards to like the plaintiffs alone, just the plaintiff. Meaning, MX has to stop discriminating against just you, plaintiff. But you can't get relief that eliminates MX's racial quotas. And I guess that's the question we need to ask MX and see what they say about it. Yes, Your Honor. And, you know, based on cases, I think specifically Jack v. Ring, MX's interpretation of the agreement is obviously not dispositive because, you know, they do have a concerted interest in applying a certain position before this court. What this court has to look at is the actual individual claims only provision. It can't just ask MX, you know, what do you guys think because they have a vested interest in their legal position, right? You have to look at the actual language of the agreement, which we believe prohibits the plaintiffs from seeking public injunctive relief because, again, you only have that if arbitrator's authority to make awards is limited to those parties alone, that language would be superfluous if it did not limit the type of relief that plaintiffs can seek to just them only, meaning stop discriminating against this plaintiff only rather than eliminate racial quotas, eliminate different financial qualifications for customers. And I see I'm running out of time. Well, let me just ask you a question because I am a little confused. You're contending that California law applies to everybody here. Is that correct? No, Judge Schroeder. So we're actually contending. Well, that's what I did. I thought you were. So California law with respect to McGill would only apply to plaintiffs Larson, Netzel, and Smith. Landcamp, we do not allege, has any connection to California.  Landcamp is out, but the other two are in. And if we were to disagree with you on that and say only Larson really has the connections to California, what would we do then? So at that point, the agreement is unenforceable. I mean, obviously, I think it applies to all three. But in that instance, Your Honor, the agreement would be unenforceable as to Larson. And if the court rules that it's enforceable as to the other plaintiffs, then the case would just split at that point and Ms. Larson can proceed in court, although we've raised other arguments as to why it's unenforceable as to the other plaintiffs as well. Well, I thought at some point that you were suggesting that Larson would represent a subclass of California folks. She could. She could potentially if the court, if the district court eventually certifies it. But at this point, it's just her. Saying that's hypothetical. Okay. Thank you. Thank you. Thank you. May it please the Court. Robert Loeb for Eppley American Express. Judge Nelson, you are correct. DiCarlo controls on the issue of whether public injunctive relief is barred by this state. It's not. Okay. Let me ask you this, because what I heard was, and I think this is helpful clarification, you've said no, you can get public injunctive relief in the arbitration. You've taken that position, correct? And we argued that in our brief team of cases. I understand. What do you think public injunctive relief means? Do you think that any injunction that the arbitrator could issue would only apply to Larson and the four plaintiffs? Or would it bind American Express beyond that? The arbitrator is authorized under this agreement to issue any relief and any remedy that's authorized by the facts and the law. It would be an award to the individual, because this is an individual action, as McGill recognized, as DiCarlo recognized. But the injunction, unlike the cases which have been considered barred under McGill, barring public injunctive relief, does not bar an injunction that affects or benefits third parties. So that, you know, we sent in the Patrick decision. Patrick explains that very clearly. It says the distinction on things that bar public relief and that not are the ones that bar public relief speak to limiting the relief, limiting the relief to just the plaintiff, and barring things that will affect other plaintiffs or other parties. That's the language in Patrick. That's the language you also find in all the other cases distinguishing what is barred and what is not. So we raise in our brief argument that public injunctive relief is allowed here. And, of course, if you agree with this, almost all the other issues fall out of this case, and I can do a road map on that for you. But in their response and their reply, they only raised two arguments of why, why not be ---- Alito, and just to put a finer point on that, we wouldn't have to get into the preemption arguments. You wouldn't have to get into the preemption arguments? You wouldn't have to get into the argument about what the nature, whether what's being requested here is public injunctive relief? Because whatever it ---- We wouldn't even need to get into the choice of law. Exactly. Because there wouldn't be a conflict. You wouldn't have to parse which State has more significant interest, because that's only relevant if there's a fundamental policy of California being violated. And if there's ---- if this contract allows public injunctive relief ---- Then it's not violating. It's not. And all we have would be just like where the district court was, that just New York law would apply. So for the choice of law analysis, are we only looking at these four plaintiffs, or are we supposed to be looking at the putative class as a whole? There's no class that's been certified, so you would just look at these individuals. But, again, the ---- Then would you agree that the district court's analysis on that was slightly incorrect? Not to say that you couldn't be upheld on different grounds, but the district court said, basically threw up her hands and said, well, I can't figure out all the interests here because they're so disparate. But you can if there's just four that we're dealing with. I don't read it that way. I read the judge went through each one of the individual plaintiffs and talked about their nexus and found it was insufficient to trump the choice of law of New  York. But, again, there's no need to even think about that, because the context issue only comes up if there's also a violation of a fundamental value or principle of California. And, again, the only thing here that's being cited by the plaintiffs is that their red herring, their false premise that this contract bars public injunctive relief. So let me just get to the two things they put in their reply brief to say why DeCarlo wasn't controlling. So, first, they say, well, unlike DeCarlo, this has a provision that bars preclusive effect to third parties. Well, Patrick, which we sent into the Court, which, by the way, existed at the time they filed the reply brief, but was just ignored by them, right, it expressly says, as the same verbatim provision we have here as in the Patrick contract, and they say that does not bar public injunctive relief. That's just the background rule in California. So you can still issue public injunctive relief even when that is in the contract. So they have two arguments. One of them is clearly barred by Patrick. The second one is they point to language in the contract, ER-126, Roman 2D, which says the arbitrator's authority is limited to awards to the plaintiff alone, right? So none of that speaks to relief. None of that we have another provision saying that the arbitrator has authority to grant any and all relief required and supported by the facts and the law. So it doesn't bar public injunctive relief, but it also has no application here. If you look at the provision that they're looking at there, if you look at page 126, there's a subsection A and there's a subsection B. Subsection A deals with claims about the individual suing or pursuing a claim against American Express. This language does not apply to it. It only appears in subsection B. Subsection B is about individual versus individual claims, and there you have this extra sentence about making it clear that when you have two employees who have a conflict and they're suing each other or they're suing each other, the arbitrator's going to decide is going to be as to those plaintiffs alone. So that's where that language comes in. It doesn't even apply to this context, but even if it applied, it just speaks to what we know from DeCarlo and from Patrick, that saying that this is an individual action, that's what McGill says. They say, it says a public injunctive relief is consistent with bringing individual action. The problem in McGill was that the contract said it couldn't benefit third parties. That was the same thing in Blair. And Patrick says, points that out and says what made Blair different is it had express language saying it couldn't affect third parties. We don't have that here. He kept saying, well, there's something in here barring the relief. There is nothing barring. The only thing that speaks to relief is the all remedies and relief provision, which is broader than DeCarlo. Yeah, that's what I thought, because that's what DeCarlo relied on was the all remedies being broader. So I was just trying to figure out how that maps out. The difference here is the injunctive relief, the putative class action, the injunctive relief that's being sought. That was not at issue in DeCarlo, correct? At this stage, where it says putative class action, I don't think it matters. If the individuals, they have signed arbitration agreements. If it's not unconscionable, those should be enforced and there's just an order to compel. They've all agreed that the arbitration doesn't have a class action, so there wouldn't be class action. So we would have to say, in order to rule for the plaintiffs here, we would have to say that under California law, public injunctive relief requires plaintiffs to be able to seek a class action. And I don't see it. And McGill says just the opposite. And DeCarlo says just the opposite. And this Court Hodges makes very clear, if that was the case, it would be preempted. Right? So the California courts and this Court have been very careful to say, no, no, public injunctive is relief. It's not a class action. It's an individual action. You're seeking injunctive relief. Here, if they get relief saying that the policies that they're attacking of American Express, policies that don't exist and are not meritorious in their challenge, but if there was such an injunction, they would have an injunction, and if it benefits third parties and affects third parties, that is fine under this agreement. Now, whether you call that public injunctive relief or you don't call it, we've agreed to it. So this Court doesn't need to get into that whole question of that. Alito, that does distinguish this case from some of the other, because in a lot of the prior cases, if I read them correctly, the defendants were disagreeing that public injunctive relief was available, and the question was, does this fall within public injunctive relief or not? You, I think, are saying, we agree that you're seeking public injunctive relief, and we agree that you can seek it under California law and you can seek it in arbitration. We've said that to the district court. We argued it extensively in this Court. And whether what we're arguing, it's under controlling Ninth Circuit law, DeCarlo and now Patrick, that is the only appropriate way to read this contract is providing the ability to get public injunctive relief. And to read the contract contrary to Circuit precedent and contrary to its plain language, to create this whole maelstrom of other issues about what is the nature of relief here? Is it more like McGill or is it more like something else? And to get into the whole preemption issue which we raised, there's no need for this Court to get into any of that. This Court should just simply say this contract allows for public injunctive relief. There's no need to address those other issues. And all that's left is then the application of New York law to their unconscionability arguments. And the district court dealt with that correctly, saying that under New York law, you need to have both procedural and substantive, and ran through. It made factual findings as to why there's no procedural unconscionability. So this Court should simply affirm that without getting into any of the other decisions or issues in the case. Can you address briefly the Tesla decision? Because I mean, Tesla has now come in and said, well, and I think I know your answer, but I want to hear it, that discrimination claims now are public injunctive relief. And so, therefore, they basically expanded, the court of appeals has expanded the definition of public injunctive relief from McGill. I take it that has no bearing here, because your point is just going to be the same thing. Yeah. Right. You can seek the same relief. Their question is can you bar public injunctive relief or not, and is what they're seeking there public injunctive relief, which only comes up when you're actually trying to bar it. But if we aren't barring public injunctive relief, it all becomes a moot issue in the case. And so I'm happy to address any of the unconscionability arguments in the case. But, you know, otherwise, I think this is a very straightforward case where they're just trying to take a contract which gives them the public injunctive relief. The forum is available in arbitration. They just don't want that forum. But that's the binding arbitration agreement which has to be enforced here. Judge Gould, do you have any questions? No. No questions. Okay. Thank you, counsel. Okay, Your Honor. So briefly, I just want to address the issue of whether this agreement allows public injunctive relief. And our position is that it doesn't because of the plain language of this individual claims only clause. But this doesn't seem to square with McGill. That's the problem. McGill doesn't hinge public injunctive relief on whether a class action or individual relief is being sought. Yeah, Your Honor. I agree that whether it's a class action or not is completely irrelevant in this case. It's about whether so I have no class. No. Yeah. Yeah. We have no class. And I think some of the cases go into the difference between what is class relief versus what is public injunctive relief. And this Court, Blair, Hodges, they explain that public injunctive relief means that it benefits the diffuse public without actually while benefiting, you know, only incidentally versus a class action, which the benefits flow directly to the class members rather than the public in general. But very briefly, I just want to further explain why this agreement bars public injunctive relief despite Amex's assertions. And I think the Patrick case, it's interesting because the Patrick case doesn't discuss whether it was an arbitration based on California procedural law or the FAA. And that makes a huge difference because the Vandenberg case, which prohibited public injunctive relief under or, sorry, prohibited non-mutual collateral estoppel, that was based on strictly California procedural law. And the Court specifically said we're not discussing the FAA. This decision does not apply to the FAA. At the same time, the California Supreme Court said that non-mutual collateral estoppel is one of the pillars of public injunctive relief. And the FAA, this Court has said that FAA arbitrations can have collateral estoppel effect. And most circuits allow non-mutual collateral estoppel effect. So by Amex prohibiting people or prohibiting non-mutual collateral estoppel effect, it just goes to show their intent to prohibit public injunctive relief because that's one of the pillars. If this goes to arbitration, you're going to be making a different argument to the arbitrator. You'll be arguing, no, we can get all that relief, I assume. Well, we're going to seek every avenue of relief possible, obviously, especially if Amex concedes it. But I think the natural reading is that it is prohibited. Okay. And I see them over time. I have a question for you. Yes, Judge. Because Amex has said that you can seek the public injunctive relief in arbitration, what's the problem for your clients if they go to arbitration and you ask the arbitrator to enforce what Amex has said today and they consider the injunctive relief on the merits? Yes, Judge Gould. So, you know, as an initial matter, I think the issue is that the agreement actually prohibits this kind of relief and the court should interpret the contract as is. But secondarily, like I just mentioned, under the FAA, if we get an injunction that gets converted to a judgment in the district court, most circuits allow non-mutual collateral estoppel effect, which is kind of one of the purposes of a public injunction. Here, the agreement specifically says no. You know, another person that's a member of the public that's discriminated against can't come in and have this arbitrator award that's now a judgment and say, I want to enforce this, or I want to enforce the injunction that says no more racial quotas at Amex. So it defeats one of the main purposes of public injunctive relief, even if we could get such an award in arbitration. Good. Thank you. Thank you, Judge Gould. All right. Thank you very much. Thank you, Your Honors. For all counsel for your arguments, and the case is now submitted.
judges: SCHROEDER, GOULD, NELSON